[Civ. No. 50794. First Dist., Div. Four. Mar. 10, 1983.]

PREMIER INSURANCE COMPANY, Plaintiff and Respondent, v. WILLIAM E. WELCH et al., Defendants and Appellants.

**COUNSEL**

Stephen McReavy, Linda E. Klamm and Hall, Henry, Oliver & McReavy for Defendants and Appellants.

Raymond Coates and Low, Ball & Lynch for Plaintiff and Respondent.

OPINION

CALDECOTT, P. J.—Defendants William E. Welch and Ann B. Welch (appellants or Welchs) appeal from a judgment rendered in favor of plaintiff Premier Insurance Company (respondent) in an action brought for declaration of rights under an "all risk" homeowners insurance policy.

The case was decided upon a stipulation of facts which reads as follows.[1]

". . . [Appellants] were the owners of certain improved real property situated at 410 County View Drive in Mill Valley, Marin County, California. The improvement consisted of a single family residence constructed in 1972 on fill. A drainage system was installed prior to the laying of the foundation and the placement of the fill. The drainage system consisted of several layers of gravel containing a perforated drain pipe, which emptied into a hillside below. After this drainage system was installed, the lot was graded, the house was built, the sewer main was installed, and other miscellaneous construction took place. All of this activity was completed prior to the purchase of the home by the Welch's.

"The hillside upon which the Welch's home was built was stable until January 1978, when, during a heavy rainy season, the fill began to slide downhill. The fill caused the foundation piers to tilt, and as the piers tilted, the foundation cracked in half, causing it to tilt and break out of the ground. As this movement progressed, the house tilted and began to break off the foundation, eventually sliding completely off the foundation and overturning into the ravine below. As a result, the house had to be demolished.

"Investigation during and after the land movement revealed that the subdrain designed to release subsurface waters had been damaged near the lower end of the drain, and this impeded its drainage capacity, either wholly or partially. With the drainage system unable to accommodate the percolating rainwater, the fill became saturated and caused the movement described above.

"The damage to the subdrain is such that it could not have been the result of natural causes. The most probable explanation is that the drain was damaged by the original sewer contractor when the sewer lines were laid 2 to 3 feet below the subdrain and at a 90 degree angle to the subdrain. This sewer line was subsequently located almost directly beneath the damaged area of the subdrain. Regardless of the identity of the perpetrator, it is established by expert testimony that the damage to the subdrain was due to the human element, and had been in a damaged state for some period of time, probably before the completion of construction on the Welch's home.

---
[1]The only evidence presented was the stipulation of facts and a specimen insurance policy.

"It is further established by expert testimony that the slide would not have occurred if the drain had not been damaged. Additionally, it is established by expert testimony that if no drainage system at all had been installed or provided for by the developer, then the slide would also have occurred."

The homeowners insurance policy issued to appellants, which was in effect on or about January 15, 1978, the time of the incident, read in relevant part as follows:

"This policy insures under: COVERAGE A—DWELLING AND COVERAGE B—APPURTENANT STRUCTURES against all risks of physical loss to the property covered (and under COVERAGE D, ADDITIONAL LIVING EXPENSE resulting from such loss), EXCEPT AS OTHERWISE EXCLUDED OR LIMITED.

"Exclusions: THIS POLICY DOES NOT INSURE AGAINST LOSS: Under Coverages A, B and C (and under Coverage D—Additional Living Expense resulting from such loss):

"1. CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY ANY OF THE FOLLOWING:

"(a) FLOOD, SURFACE WATER, WAVES, TIDAL WATER OR TIDAL WAVES, OVERFLOW OF STREAMS OR OTHER BODIES OF WATER, OR SPRAY FROM ANY OF THE FOREGOING, ALL WHETHER DRIVEN BY WIND OR NOT;

"(b) WATER WHICH BACKS UP THROUGH SEWERS OR DRAINS: OR

"(c) WATER BELOW THE SURFACE OR THE GROUND INCLUDING THAT WHICH EXERTS PRESSURE ON OR FLOWS, SEEPS OR LEAKS THROUGH SIDEWALKS, DRIVEWAYS, FOUNDATIONS, WALLS, BASEMENT OR OTHER FLOORS OR THROUGH DOORS, WINDOWS OR ANY OTHER OPENINGS IN SUCH SIDEWALKS, DRIVEWAYS, FOUNDATIONS, WALLS, OR FLOORS; UNLESS LOSS BY FIRE OR EXPLOSION ENSUES, AND THIS COMPANY SHALL THEN BE LIABLE ONLY FOR SUCH ENSUING LOSS, BUT THESE EXCLUSIONS DO NOT APPLY TO LOSS BY THEFT."

Based upon the above-stated stipulated facts and the cited portions of the insurance policy the trial court, sitting without a jury, concluded that the efficient cause of the landslide which occasioned the loss to the property was the heavy rainfall rather than the damaged subdrain. In accordance therewith, the trial court held that the loss was excluded under the insurance policy and entered judgment in favor of respondent.

■ Appellants argue that the ruling of the trial court is erroneous for two reasons. One, contrary to the trial court's conclusion, the efficient or moving cause of the loss here incurred was the negligently maintained drainage system, a covered risk, rather than the excepted peril of rainfall and landslide and as a consequence the insurer was liable under the "all risk" insurance policy (*Sabella* v. *Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889]; *Sauer* ·v. *General Ins. Co.* (1964) 225 Cal.App.2d 275 [37 Cal.Rptr. 303]; *Gillis* v. *Sun Ins. Office, Ltd.* (1965) 238 Cal.App.2d 408 [47 Cal.Rptr. 868, 25 A.L.R.3d 564].) Two, even if the damaged subdrain was to be deemed only a concurrent proximate cause of the incident, respondent was still responsible under the prevailing case law. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123]; *Safeco Ins. Co. of America* v. *Guyton* (9th Cir. 1982) 692 F.2d 551.) For the reasons which ensue we agree with appellants and reverse the judgment.

Before discussing appellants' arguments on the merit, we note that where, as here, the facts on appeal are settled and not in dispute, the determination of proximate cause is not binding on the reviewing court. In such an instance, the proximate causation becomes a question of law which is subject to the appellate court's independent determination. (*Sabella* v. *Wisler, supra,* 59 Cal.2d at p. 32; *Burdette* v. *Rollefson Construction Co.* (1959) 52 Cal.2d 720, 726 [344 P.2d 307]; *Sauer* v. *General Ins. Co., supra,* 225 Cal.App.2d 275 at p. 279.) As another preliminary matter, it also bears emphasis that an "all risk" insurance policy, the type of policy issued to appellants, provides coverage for negligently caused damages unless the policy contains a specific provision expressly excluding the loss or losses thusly incurred (*Associated Engineers, Inc.* v. *American Nat. Fire Ins. Co.* (N.D.Cal. 1959) 175 F.Supp. 352, 353; Annot. (1963) 88 A.L.R.2d 1122, 1125.) With these preliminary remarks in mind we now proceed to analyze and discuss appellants' contentions on the merit.

Briefly restated, the first issue revolves around a determination whether the efficient cause of loss was the negligently damaged subdrain which was covered under the all risk policy, or whether the loss to the dwelling occurred due to the heavy rainfall causing a number of conditions (flood, surface water; water backing up through sewers or drains; water accumulating below the surface or ground which exerts pressure on or flows, seeps or leaks through the foundations, walls, basement, floors or through openings in the foundations, walls or floors; or water causing landslide, mudflow, earth sinking, rising or shifting) which were exempted under the explicit provisions of the policy.

■ We start our discussion with the settled principle that where, as here, the loss occurs through a concurrence of covered and uncovered risks, the insurer's liability under the policy depends on whether the efficient cause of the loss (that is the cause that sets others in motion) is a covered peril. If it is, the insurer will

be held liable even though other exempted causes also contribute to the loss. As stated in *Sabella* v. *Wisler, supra,* 59 Cal.2d 21, 31-32: " '[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—*the one that sets others in motion*—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.' " (See also *State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, 104, fn. 10; 6 Couch, Insurance (1930) § 1466.)

■ In the instant case, the causal sequence leading up to the loss of the appellants' house began with the negligent installation of the sewer line in 1972. This damaged the subdrain underlying appellants' property by impeding its capacity to release subsurface waters. Although the damage created no problem for several years, during the winter of 1977/1978 the drainage system was apparently unable to accommodate the unusually large amount of percolating rainwater. As a result, the fill became saturated, causing the movement which damaged appellants' house. While it is true that the heavy rainfall was the first link in the causal sequence, the immediate or proximate cause of loss was the damage to the drain which set in motion the chain of events leading to the ultimate destruction of the dwelling. ■ It is a well settled principle of law that the proximate cause is that cause " 'which, in natural and continuous sequence, unbroken by an efficient intervening cause, produced the injury or damage complained of and without which such injury or damage would not have occurred.' " (*Parker* v. *City & County of San Francisco* (1958) 158 Cal.App.2d 597, 607 [323 P.2d 108].) ■ Here, there is no claim that the 1977/1978 rainfall, heavy as it was, constituted an act of God and/or that it was unforeseeable.[2] In other words, while the vicissitudes of the weather was a significant contributing factor in bringing about the loss, it failed to comprise a superseding cause breaking the chain of causation and being able to produce the loss independently of the damaged drainage. This is demonstrated by the stipulated fact that the slide would not have occurred if the drain had not been damaged. The conclusion is thus inescapable that in the case at bench the immediate cause which in an unbroken and continuous sequence led to the loss in question was the damaged drain which is but another way of saying that the moving or efficient cause of loss was the negligently maintained subdrain rather than the rainfall.

The cases supporting our conclusion reached above are *Sabella* v. *Wisler, supra,* 59 Cal.2d 21 and *Sauer* v. *General Ins. Co., supra,* 225 Cal.App.2d 275. In *Sabella,* plaintiff's house was damaged as a result of the subsidence of land underneath and adjacent thereto. The insurer contended that the proximate

---

[2]In fact, an examination of December-January rainfall totals for the Marin area reveals that 1977-1978 was only the third wettest winter in the immediately preceding 10 years, being exceeded by both 1968-1969 and 1969-1970.

cause of the damage was the settling of improperly compacted fill under the house, which was an excluded peril under the terms of the policy. The Supreme Court agreed that if the settling was the proximate cause of the loss there was no coverage. However, the evidence showed that the settling was caused by the rupture of a sewer line beneath the house which in turn was caused by the negligence of the person who installed it during the course of construction. The court found that although the immediate cause of the loss was settling of the land beneath the house, the negligent installation of the sewer line initiated the chain of events which caused the damage to the house. Hence, the sewer installer's negligence was the proximate cause of the loss.

In its reasoning the Supreme Court stated as follows: "Defendant insurer attempts to establish its non-liability by reliance upon Section 532 of the Insurance Code, which states that 'If a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted even though the immediate cause of the loss was a peril which was not excepted.' The insurer's argument is that since in a factual sense the loss herein would not have occurred 'but for' the settling of the underlying earth and house, the plaintiffs are thereby exempt from coverage for this loss. But section 532 must be read in conjunction with related section 530 of the Insurance Code (*Pacific etc. Co.* v. *Williamsburgh City Fire Ins. Co.*, *supra*, 158 Cal. 367, 372), and section 530 provides that 'An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause.' It is thus apparent that if section 532 were construed in the manner contended for by defendant insurer, where an excepted peril operated to any extent in the chain of causation so that the resulting harm would not have occurred 'but for' the excepted peril's operation, the insurer would be exempt even though an insured peril was the proximate cause of the loss. Such a result would be directly contrary to the provision in section 530, in accordance with the general rule, for liability of the insurer where the peril insured against proximately resulted in the loss (6 Couch, Insurance (1930) § 1464)." (*Sabella* v. *Wisler, supra,* 59 Cal.2d 21 at p. 33.)

In *Sauer* v. *General Ins. Co., supra,* 225 Cal.App.2d 275, another case in point, a fresh water pipe running beneath the plaintiffs' home sprung an accidental leak and discharged a substantial amount of water into the soil surrounding the foundations. Although the court, as in *Sabella,* noted that the immediate cause of the plaintiffs' loss was the subsidence of the underlying earth, it concluded that the proximate cause of the damage was the force which set this event in motion, i.e., the leaking pipe. In accordance therewith, the court held that despite the exclusionary provisions of defendant's insurance policy barring recovery for loss caused by, resulting from, contributed to, or aggravated by

any earth movement, including earthquake, landslide, mudflow, earth sinking, rising or shifting, settling, cracking of walls, floors, foundations, etc., the plaintiff was entitled to recover for the loss suffered.

But in addition to the foregoing considerations, the judgment at bench must be reversed for the second reason spelled out by appellants: i.e., that the damaged subdrain was, at the very least, a concurrent proximate cause of the property loss incurred by appellants which ipso facto gave rise to respondent's liability in spite of the fact that the rainfall, an excluded peril, and the earth movement resulting therefrom may also have constituted a proximate cause.

The cases supporting appellants' proposition are *State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94 and *Safeco Ins. Co. of America* v. *Guyton, supra,* 692 F.2d 551. In *State Farm,* the insured was covered under a homeowners policy and an automobile policy issued by the same insurer. The homeowners policy contained an exclusionary clause that barred coverage for injuries arising out of the use of an automobile. Due to the negligence of the insured, a .357 Magnum pistol went off in the course of driving which seriously injured the passenger of the vehicle. The question presented was whether there was coverage for the insured's negligent act under the homeowners policy despite the exclusionary language in that policy. In holding that the passenger's personal injuries were covered under the homeowners policy as well, the Supreme Court pointed out that when two proximate causes join in causing an injury one of which is insured against, the insurer is liable under the policy irrespective of the eventuality that there is another concurrent proximate cause which constitutes an uncovered risk.

In *Safeco,* the other case cited by appellants, the principles set out in *State Farm* were applied to a factual situation which is virtually indistinguishable from the facts here presented. In *Safeco,* the homeowners were insured under an all risk insurance policy which akin to the case at bench excluded loss caused by, resulting from, contributed to, or aggravated by, flood, surface water, earth movement, including landslide, mudflow, earth sinking, rising or shifting. A record rain resulting in flood destroyed the properties of the insureds. In an action brought for declaratory relief the homeowners contended inter alia that one of the proximate causes of the loss was the negligence of third persons in erecting and maintaining flood control facilities. The district court held that by virtue of the exclusionary clause barring recovery for flood, the policyholders were not entitled to damages, even if the third parties' negligence was a proximate cause of the loss. The Ninth Circuit Court of Appeals reversed the judgment and held that the policyholders were entitled to recovery even if the negligent act of third persons was one of the proximate causes. In its underlying reasoning the appellate court referred to *State Farm* and cited the following passage therefrom: "Although there may be some question whether either of

the two causes in the instant case can be properly characterized as *the* 'prime,' 'moving' or 'efficient' cause of the accident we believe that coverage under a liability insurance policy is equally available to an insured whenever an insured risk constitutes simply *a* concurrent proximate cause of the injuries." (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, 104-105; *Safeco Ins. Co. of America* v. *Guyton, supra,* 692 F.2d 551 at pp. 554-555.)

Since in the instant case the stipulated facts explicitly state that the earth slide resulting in the destruction of the dwelling would not have occurred if the subdrain had not been damaged, it is established as a matter of law that the damage to the drain was a concurrent proximate cause of the loss. This, of course, compels the conclusion that the judgment at bench must be reversed under the *State Farm* and *Safeco* rationale as well.

In view of our foregoing discussion the additional issues raised by the parties need not be decided.

The judgment is reversed.

Christian, J., and Poché, J., concurred.

A petition for a rehearing was denied April 5, 1983.